**REITLER KAILAS & ROSENBLATT LLC**
Brett Van Benthysen
Jocelyn Jacobson, *pro hac admission pending*
885 Third Avenue, 20th Floor
New York, NY 10022
Phone: (212) 209-3050
Fax: (212) 371-5500
Email: jjacobson@reitlerlaw.com
         bvanbenthysen@reitlerlaw.com
*Attorneys for Plaintiff Vedanta Limited*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VEDANTA LIMITED,<br><br>                    Plaintiff,<br><br>          v.<br><br>NOBLE RESOURCES INTERNATIONAL PTE. LTD.,<br><br>                    Defendant. | Civil Action No. _____<br><br>**VERIFIED COMPLAINT** |

Plaintiff VEDANTA LIMITED (hereinafter referred to as "Vedanta" or "Plaintiff"), by its attorneys Reitler Kailas & Rosenblatt LLC, as and for its Verified Complaint against Defendant NOBLE RESOURCES INTERNATIONAL PTE. LTD. (hereinafter referred to as "Noble" or "Defendant"), alleges upon information and belief, as follows:

1.   This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.  Plaintiff brings this action to recover vessel and port charges, including demurrage charges and charges for underwater hull cleaning and anchorage owed by Defendant in connection with the sale and shipment of iron ore by Plaintiff Vedanta to Defendant Noble and the termination of the contract for such sale and shipment.

2. Plaintiff brings this action pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset forfeiture Actions ("Rule B"), seeking an order and Writ of Attachment for, *inter alia*, a garnishee in this Honorable District wherein it is believe that monies or other assets of Defendant are presently located, namely Cargill, Inc., with an address of 500 Frank West Burr Boulevard Ste 44, Teaneck, New Jersey 07666.  Accordingly, venue is proper.

3. This proceeding is brought to secure personal jurisdiction over Defendant, as well as to obtain security for an arbitration that has been commenced by Plaintiff.

## PARTIES

4. At all times material to this action, Plaintiff Vedanta was, and still is, a foreign company duly organized and operating under the laws of India with its registered office at Sesa Ghor, 20 EDC Complex, Patto, Panaji Goa 403001.

5. Upon information and belief, Defendant Noble is a foreign corporation or other business entity organized and existing pursuant to the laws of Singapore, with its registered office at 60 Anson Road #19-01 Mapletree Avenue, Singapore 079914.

## BACKGROUND FACTS

6. This case arises out of a Master Agreement for the Sale and Purchase of Iron Ore dated April 15, 2016 between Vedanta and Noble (the "Contract"), pursuant to which Vedanta agreed to sell, and Noble agreed to buy, 1,270,000 wmt (+/- 10% at Vedanta's option) of iron ore fines in fifteen (15) separate shipments over an approximately one-year period.  A copy of the Contract is attached as Exhibit A.

7. The Contract was on CFR delivery terms. Contract ¶3.10. Consequently, Vedanta was under a duty to ship each shipment on board a vessel. In order to comply with this duty, Vedanta entered into voyage charterparties with shipowners or disponent owners in order that each

shipment was shipped to its contractual destination. As a consequence, Vedanta was the seller under the Contract, the charterer under each charterparty entered into in order to ship each shipment under the Contract and the shipper for the purposes of each bill of lading issued in relation to each shipment shipped under the Contract.

8. The Contract specified the shipment schedule by designating a laycan month for each shipment (with a latest shipment date) and required that Vedanta nominate the laycan at least 15 days before the beginning of each laycan as set forth in the Contract. Contract ¶3.9.

9. Pursuant to the Contract, Vedanta was required to nominate a performing vessel. Noble's acceptance of the nominated vessel could not be unreasonably withheld. Contract ¶8.1.1.

10. The Contract further required that Noble establish an irrevocable letter of credit in favor of Vedanta for the full amount of the shipment value at least three (3) calendar days prior to the first day of the designated laycan period for each shipment. Contract ¶5.2.3(a).

11. The Contract provided that if the letter of credit was not received by Vedanta as per the requirements of the Contract, Vedanta could choose not to accept the vessel to berth or commence loading until the letter of credit was received. Contract ¶5.2.3(c). Furthermore, this contractual provision provided that Vedanta had the right to claim all demurrage (vessel waiting time), detention or consequential losses due to Noble's failure to timely provide the letter of credit. *Id.*

12. The first two shipments occurred as per the Contract. The third shipment occurred although there is a dispute over payment for the iron ore. However, that dispute is not the subject of the instant proceeding.

**FOURTH SHIPMENT**

13. With respect to the fourth shipment, Vedanta nominated a laycan of November 4-8, 2016 (which facilitated shipment before the expiry of the latest shipment date) on October 18, 2016 and nominated a vessel, the M/V "INDUS VICTORY" on October 25, 2016. Thus Vedanta took all actions required by the Contract on a timely basis in respect of the fourth shipment.

14. Noble failed to establish a letter of credit by October 31, 2016, which was three calendar days before the first day of the laycan period, as required by the Contract.

15. Vedanta sent a notice to Noble on November 1, 2016 of the default.

16. The latest shipment date for the fourth shipment was November 10, 2016 at which time Noble had still failed to establish a letter of credit.

17. On November 11, 2016 Vedanta sent a further notice to Noble including a request that all breaches be remedied within thirty (30) days.

18. Noble never responded to any of the notices and did not remedy the breaches. At no time did Noble respond to the nomination of the M/V "INDUS VICTORY".

19. On November 18, 2016 Vedanta informed Noble that it was withdrawing the nomination of the M/V "INDUS VICTORY" to mitigate its losses.

20. Vedanta withdrew the M/V "INDUS VICTORY" on November 21, 2016.

21. On that same day, Vedanta issued an invoice to Noble in the amount of US$201,500 for the costs of demurrage, underwater hull cleaning costs and waiting at anchorage. A copy of the invoice is attached hereto as Exhibit B.

22. Specifically, Vedanta invoiced Noble in the amount of US$161,500 for the demurrage that was incurred for the vessel waiting time during the period from the first day of

the laycan period (the M/V "INDUS VICTORY" having tendered it notice of readiness ("NOR") prior to the start of such period) because the M/V "INDUS VICTORY" was in all respects ready to load on such date (for purposes of Clause 5.2.3(c) of the Contract) to withdrawal of the vessel (a period of 17 days).

23.     The demurrage was incurred because Noble did not establish a letter of credit and such demurrage is due from Noble pursuant to the Contract.

24.     Vedanta invoiced Noble for US$15,000 representing underwater hull cleaning costs and US$25,000 for extra port charges incurred by the owners of the M/V "INDUS VICTORY" as a result of the vessel's prolonged stay at the loadport during the period when Vedanta was awaiting Noble establishing a letter of credit.  Such costs are due from Noble pursuant to the Contract.

25.     Noble has not paid for any of these costs and fees.  There may be further costs and fees (such as further port charges), but the above represents the currently known costs and fees at the time of filing.

26.     The claims for demurrage, underwater hull cleaning and port charges are maritime claims.

## FIFTH SHIPMENT

27.     With respect to the fifth shipment, on November 2, 2016 Vedanta nominated a laycan of November 21-30, 2016 (within the laycan month and facilitating shipment before the expiry of the latest shipment date) and nominated a vessel, the M/V "LM VICTORIA" on November 16, 2016.  Thus Vedanta took all actions required by the Contract on a timely basis in respect of the fifth shipment.

28. Noble failed to establish a letter of credit by November 17, 2016, three calendar days before the first day of the laycan period, as required by the Contract.

29. Vedanta sent a notice to Noble on November 18, 2016 of the default.

30. On November 21, 2016 (the first day of the laycan) Noble rejected the M/V "LM VICTORIA" and, despite a request from Vedanta for the reasons for such rejection, did not provide any reason.

31. Vedanta also offered an alternative substitute vessel, the M/V "ZEUS" but received no response from Noble either accepting or rejecting such vessel.

32. Vedanta ultimately withdrew both vessels to mitigate its losses.

33. The latest shipment date for the fifth shipment was December 10, 2016 at which time Noble had still failed to establish a letter of credit or respond to the offer of a substitute vessel.

34. Noble never responded to any of the notices and did not remedy the breaches.

35. Vedanta issued an invoice to Noble for the demurrage for the vessel waiting time during the period when the M/V "LM VICTORIA" was in all respects ready to load (for purposes of Clause 5.2.3(c) of the Contract) within the nominated laycan to withdrawal of the vessel (a period of three days) in the amount of US$34,500.  A copy of the invoice is attached hereto as Exhibit C.

36. The demurrage was incurred because Noble did not establish a letter of credit and such demurrage is due from Noble pursuant to the Contract.

37. Noble has not paid for the demurrage.  There may be further costs and fees (such as further port charges), but the above represents the currently known costs and fees at the time of filing.

38. The claim for demurrage is a maritime claim.

## SIXTH AND SEVENTH SHIPMENTS

39. Vedanta continued to perform and nominated a laycan of December 17-26, 2016 for both shipments 6 and 7, on November 30, 2016.

40. Noble did not establish a letter of credit for either shipment by December 13, 2016.

41. Vedanta nominated a vessel, the M/V "DOUBLE DELIGHT" or substitutes for shipment 6 on December 9, 2016 and then nominated a substitute vessel, the M/V "PAOLA BOTTIGLIERI" on December 17, 2016. Noble never accepted either vessel nor stated a basis for rejecting them.

42. The M/V "PAOLA BOTTIGLIERI" tendered its NOR on December 21, 2016, within the nominated laycan, at which point the vessel was in all respects ready to load (for the purposes of Clause 5.2.3(c) of the Contract). The NOR is attached as Exhibit D. Notice was provided to Noble. The nomination, which contains the terms of the charter required by Clause 8.1.1 of the Contract, including the demurrage rate, is attached as Exhibit E. As of the date of termination of the Contract (as detailed below) the demurrage for the M/V "PAOLA BOTTIGLIERI" was US$23,050.

43. The demurrage was incurred because Noble did not establish a letter of credit and such demurrage is due from Noble pursuant to the Contract.

44. Vedanta nominated a vessel, the M/V "MARIA LAURA PRIMA" for shipment 7 on December 14, 2016. Noble never accepted the vessel nor stated a basis for rejecting it.

45. The M/V "MARIA LAURA PRIMA" tendered its NOR on December 18, 2016, within the nominated laycan, at which point the vessel was in all respects ready to load (for the purposes of Clause 5.2.3(c) of the Contract). The NOR is attached as Exhibit F. Notice was provided to Noble. The nomination, which contains the terms of the charter required by Clause

8.1.1 of the Contract, including the demurrage rate, is attached as Exhibit G.  As of the date of termination of the Contract (as detailed below) the demurrage for the M/V "MARIA LAURA PRIMA" was US$67,600.

## THE TERMINATION OF THE CONTRACT

46. On December 23, 2016, Vedanta terminated the Contract by reason of Noble's repudiatory breaches and/or its renunciation of the Contract, or in the alternative, pursuant to Clause 9 of Annexure 1, and in so doing, incurred substantial damages for loss of the benefit of the bargain.  The Notice of Termination is attached as Exhibit H.

47. For the avoidance of any doubt, Vedanta is only seeking in this action with relation to the termination of the Contract, the additional admiralty and maritime damages it incurred, and not the other substantial non-admiralty and non-maritime damages.

48. In this regard, and after termination of the Contract, Vedanta took steps to mitigate its losses with respect to the  M/V "PAOLA BOTTIGLIERI" and the M/V "MARIA LAURA PRIMA" (the vessels nominated for shipments 6 and 7, respectively) by locating alternative cargoes for carriage by these vessels.

49. During such period, Vedanta incurred additional losses for the demurrage that continued to accrue for both the M/V "PAOLA BOTTIGLIERI" and the M/V "MARIA LAURA PRIMA".

50. Specifically, for the M/V "PAOLA BOTTIGLIERI", Vedanta has been unable to locate an alternative cargo for carriage by this vessel although it is continuing to take steps to locate such alternative cargo.  Between December 23, 2016 and the date hereof, the demurrage incurred is US$245,148.

51. For the M/V "MARIA LAURA PRIMA", Vedanta was able to locate an alternative cargo. Between December 23, 2016 and the date of commencement of loading of an alternative cargo for carriage on the M/V "MARIA LAURA PRIMA" (December 28, 2016) the demurrage incurred was US$58,475.

52. These losses were incurred by reason of the termination of the Contract and/or because Noble did not establish a letter of credit for the shipments and such demurrage is due from Noble pursuant to the Contract.

53. Noble has not paid for the demurrage. There may be further losses as Vedanta has yet to locate an alternative cargo for the M/V "PAOLA BOTTIGLIERI", but the above represents the currently known demurrage costs at the time of filing.

54. These claims for demurrage are maritime claims.

**ARBITRATION**

55. The Contract, in Article 7 of Annexure 1, provided for arbitration of any disputes in Singapore with such proceedings to be governed by English law.

56. On December 29, 2016 Vedanta sent Noble a Notice of Arbitration. The original Notice of Arbitration was filed in Singapore on December 30, 2016. A copy of the Notice of Arbitration is attached hereto as Exhibit I.

57. In that arbitration, Vedanta seeks to recover damages relating to Noble's failure to perform pursuant to the Contract including, in relevant part, the demurrage costs and hull cleaning and additional anchoring due totaling $630,273, as broken down as follows:

    a. Demurrage for M/V "INDUS VICTORY":    $161,500

    b. Underwater hull cleaning costs for M/V "INDUS VICTORY":    $15,000

    c. Waiting at anchorage for M/V "INDUS VICTORY":    $25,000

|   |                                                                                   |           |
|---|-----------------------------------------------------------------------------------|-----------|
| d. | Demurrage for M/V "LM VICTORIA":                                                 | $34,500   |
| e. | Demurrage for M/V "PAOLA BOTTIGLIERI" pre-termination of the Contract            | $23,050   |
| f. | Demurrage for M/V "MARIA LAURA PRIMA" pre-termination of the Contract            | $67,600   |
| g. | Demurrage for M/V "PAOLA BOTTIGLIERI" post-termination of the Contract           | $245,148  |
| h. | Demurrage for M/V "MARIA LAURA PRIMA" post-termination of the Contract           | $58,475   |
|   | **TOTAL**                                                                         | **$630,273** |

58. Vedanta also reserved its right to add to the relief sought.

59. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law.

## RULE B ATTACHMENT

60. This action is brought in order to obtain jurisdiction over Defendant Noble and also to obtain security for Plaintiff Vedanta's claims for demurrage, underwater hull cleaning costs and extra anchorage fees (as well as interest, costs and legal fees), and in aid of the arbitration proceedings.

61. Defendant Noble cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. See Declaration of Brett Van Benthysen ("Van Benthysen Decl."), ¶¶2-3. However, upon information and belief, Defendant Noble has assets within this District comprising of cash, funds, credits, debts, and/or payments, belonging or due to Noble.

62. Upon information and belief, Noble trades with certain trading companies located within this District, including, but not limited to, Cargill, Inc., and such entities owe monies to Noble. See Van Benthysen Decl. ¶¶4-5.

63. The total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Vedanta against Noble at the present time is $780,273, comprised of the $630,273 presently owed for demurrage, underwater hull cleaning costs and anchorage costs plus a reasonable allowance for interest, costs and attorneys' fees.

64. Vedanta seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions attaching any assets of Defendant Noble which are held within this District for the purpose of obtaining personal jurisdiction over Defendant Noble, and to secure Plaintiff Vedanta's claim as described above.

WHEREFORE, Plaintiff Vedanta respectfully requests the following:

a) That process in due form of law issue against Defendant Noble, citing it to appear and answer under oath all and singular the matters alleged in the Complaint, failing which a default may be taken against it for the principal amount of the claim of $630,273, plus interest, costs and attorneys' fees;

b) That since Defendant Noble cannot be found within this District pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, Cargill, Inc., in the amount of $780,273, to secure Plaintiff Vedanta's claims, and that all persons claiming any

11

        interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

c) That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

d) That this Court award Vedanta the attorneys' fees and costs it has incurred in this action; and

e) That Vedanta has such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
       January 20, 2017

                         REITLER KAILAS & ROSENBLATT LLC

                         By:   s/ Brett Van Benthysen
                                Brett Van Benthysen
                                Jocelyn Jacobson, *pro hac admission pending*
                                Reitler Kailas & Rosenblatt LLC
                                885 Third Avenue, 20th Floor
                                New York, New York 10022
                                (212) 209-3050
                                *Attorneys for Plaintiff Vedanta Limited*

## VERIFICATION BY WAY OF UNSWORN DECLARATION

I am an associate at the law firm of Reitler Kailas & Rosenblatt counsel for the Plaintiff in this matter. I make this certification pursuant to and in compliance with Supplemental Admiralty Rule B. Plaintiff is a foreign business entity and there are no authorized officers of the Plaintiff readily available to make this verification and I am authorized to make this verification on its behalf.

I have read the foregoing Verified Complaint and the contents thereof; the same is true and correct to the best of my knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true. The sources of my information and the grounds of my belief are documents in the possession of my firm and communications made to me by agents of Plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 20, 2017 at New York, New York

Brett Van Benthysen